IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHERYLE SMITH,<br><br>      Plaintiff,<br><br>    v.<br><br>OPTIMA SERVICE SOLUTIONS, LLC,<br><br>      Defendant. | CIVIL ACTION NO.<br>1:13-cv-2141-ODE |

# COMPLAINT

Plaintiff Sheryle Smith ("Plaintiff"), by and through his undersigned counsel, brings this action against Defendant Optima Service Solutions, LLC ("Defendant") and states and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA") alleging that Defendant failed to pay Plaintiff the correct amount of overtime wages during her employment.[1]

---

[1] On May 8, 2013, Plaintiff filed Charge No. 410-2013-04193, alleging age discrimination, with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff will amend her complaint to include a claim arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, ("ADEA") on or after July 7, 2013—60 days after the filing of the charge.

## JURISDICTION AND VENUE

2. This Court exercises jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(B), NDGa., because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Plaintiff is a citizen of the State of Georgia who resides in Gwinnett County.

5. Plaintiff was born on July 4, 1964.

6. According to Defendant's registration with the Georgia Secretary of State, Defendant is a Georgia corporation with its principal office address at 10800 Alpharetta Highway, #208-509, Roswell, Georgia 30076.

7. Defendant may be served with process by delivering a copy of the complaint and summons to its registered agent, Stuart B. Mager, at 1100 Johnson Ferry Road, #420, Atlanta, Georgia 30342.

8. Defendant employed Plaintiff, who engaged in interstate commerce and/or the production of goods for interstate commerce.

9. Defendant is an enterprise "that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person engaged in interstate commerce and/or the production of goods for commerce."  29 U.S.C. § 203(s)(1)(A)(i).

10. At all relevant times, Defendant had, and continues to have, at least $500,000.00 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A)(ii).

11. At all times relevant to this action, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d).

12. At all times relevant to this action, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e).

### COUNT ONE: WILLFUL FAILURE TO PAY OVERTIME

13. Defendant facilitates the delivery and installation of home appliances purchased at certain retailers, such as Best Buy or Home Depot, by contracting with third-party service technicians.

14. Defendant uses proprietary software called "Evolution" to achieve "service chain optimization."[2]

15. Plaintiff began working for Defendant on or about May 13, 2011.

16. Defendant employed Plaintiff until her termination on or about April 15, 2013.

17. Defendant required Plaintiff to report to its corporate office, which is located at 10800 Alpharetta Highway, #208-509, Roswell, Georgia 30076.

18. The staff at Defendant's corporate office consists of the owners, chief executive officer, human resources manager, department managers, department supervisors, technician resource unit representatives ("TRU Reps"), team leads, and order management specialists.

19. Defendant first employed Plaintiff as an Order Management Specialist.

20. Defendant paid Plaintiff approximately $15.00 per hour, with a $1.00 shift differential, as an Order Management Specialist.

---

[2] OPTIMA SERVICE SOLUTIONS, LLC, http://www.optimaservicesolutions.com/index.html (last visited June 26, 2013).

21. As an Order Management Specialist, Defendant required Plaintiff to clock in and out using a fingerprint scanner at the entrance of the corporate office.

22. As an Order Management Specialist, Defendant scheduled Plaintiff to work from 1:00 PM to 10:00 PM five days per week.

23. Nevertheless, Plaintiff often worked in excess of 40 hours per week.

24. Defendant knew that Plaintiff worked in excess of 40 hours per week.

25. Plaintiff worked certain hours while clocked out in order to complete her work without recording hours in excess of 40 hours per week.

26. For example, on some occasions, Plaintiff clocked out for her unpaid meal period and continued working at her desk.

27. Plaintiff's Department Manager knew that Plaintiff worked during her unpaid meal period.

28. Although Plaintiff's Department Manager knew that Plaintiff worked during her unpaid meal period, Defendant did not instruct Plaintiff to stop.

29. As an Order Management Specialist, Defendant directed Plaintiff to participate in the resolution of problems relating to customer orders via email.

30. For example, Plaintiff received urgent emails from clients, technicians, and customers ("911 emails").

31. Plaintiff responded to and forwarded 911 emails as directed by Defendant's procedures.

32. When Defendant received customer complaint emails ("escalation emails"), Plaintiff assigned codes to the escalation emails as directed by Defendant's email procedures.

33. Plaintiff reviewed comments entered by technicians into Evolution and removed certain information about customers or stores as directed by Defendant's procedures.

34. Plaintiff responded to voicemails forwarded from another call center and responded as directed by Defendant's procedures.

35. Plaintiff entered purchase orders from Home Depot into Evolution.

36. Plaintiff received one disciplinary citation as an Order Management Specialist for relaying information to a customer provided to

her by her team leader, which Defendant regarded as a violation of its procedures.

37. Plaintiff did not receive any additional disciplinary citations during her employment by Defendant.

38. In fact, Plaintiff received performance reviews showing that she exceeded company expectations.

39. Plaintiff was a qualified employee with all of the requisite skills and knowledge to perform her job as an Order Management Specialist.

40. In approximately March of 2012, Defendant promoted Plaintiff to the position of Team Lead.

41. Defendant paid Plaintiff approximately $16.00 per hour as a Team Lead.

42. During her tenure as a Team Lead, Defendant required Plaintiff to clock in and out using a fingerprint scanner at the entrance of the corporate office.

43. As a Team Lead, Defendant scheduled Plaintiff to work from 1:00 PM to 10:00 PM five days per week.

44. Plaintiff continued to work in excess of 40 hours per week on a regular basis.

45. Defendant required Plaintiff to take calls from other Team Leads while off the clock.

46. Plaintiff's Department Manager instructed Plaintiff not to report off the clock hours spent answering questions from other Team Leads.

47. Plaintiff often clocked out for her unpaid meal period but continued to work.

48. Although Plaintiff's Department Manager knew that Plaintiff worked during her unpaid meal period, Defendant did not instruct Plaintiff to stop.

49. As a Team Lead, Defendant required Plaintiff to resolve disputes by email, fix phones, make schedules for the phone operators, and train phone operators, among other job duties.

50. Defendant also required Plaintiff to ensure that calls and finishing notes were entered quickly and efficiently into Evolution, and that relevant information was forwarded to the appropriate department as directed by Defendant's procedures.

51. Plaintiff was a qualified employee with all of the requisite skills and knowledge to perform her job as a Team Lead.

52.     In May of 2012, Defendant promoted Plaintiff to Technician Resource Unit Representative ("TRU Rep").

53.     As a TRU Rep, Defendant paid Plaintiff approximately $16.00 per hour.

54.     As a TRU Rep, Defendant required Plaintiff to clock in and out using a fingerprint scanner at the entrance of the corporate office.

55.     As a TRU Rep, Defendant scheduled Plaintiff to work from 10:00 AM to 7:00 PM, Monday through Friday.

56.     One of Plaintiff's job duties as a TRU Rep was to resolve issues via email.

57.     For example, Plaintiff responded to emails from Defendant's call center as directed by Defendant's procedures.

58.     Plaintiff forwarded emails on billing issues and internal matters as directed by Defendant's procedures.

59.     Plaintiff responded to technician's requests for additional compensation for mileage reimbursements as directed by Defendant's procedures.

60.     Plaintiff often clocked out for her unpaid meal period but continued to work.

61. Although Plaintiff's Department Manager knew that Plaintiff worked during her unpaid meal period during her tenure as a TRU Rep, Defendant did not instruct Plaintiff to stop.

62. As a TRU Rep, Plaintiff regularly worked in excess of 40 hours per week.

63. Defendant notified Plaintiff that she should be able to complete her work within her regular shift

64. However, this expectation was unrealistic.

65. Consequently, Plaintiff often worked before her regular shift hours.

66. Plaintiff often worked after her regular shift hours.

67. When Plaintiff was not clocked in, Defendant required her to take work-related calls from Team Leads, Call Center Leads, the Escalation Department, and the Internal Operations Department.

68. Plaintiff's Department Manager instructed Plaintiff not to report off the clock hours spent on work-related calls.

69. In September of 2012, Defendant gave Plaintiff a raise to approximately $17.00 per hour.

70. However, rather than continuing to pay Plaintiff on an hourly basis at her new rate, Defendant informed Plaintiff that she would be paid on a salary basis.

71. Beginning in September of 2012, Plaintiff received wages at a rate of approximately $35,500.00 per year, payable every two weeks—the approximate equivalent of $17.06 per hour over the course of fifty-two, 40-hour weeks.

72. After becoming a salaried employee, Plaintiff's job title remained TRU Rep.

73. Plaintiff continued to perform the work of a TRU Rep.

74. Plaintiff continued to work in excess of 40 hours per week on a regular basis.

75. After Plaintiff became a salaried TRU Rep, Defendant discontinued the practice of tracking her hours.

76. Plaintiff was a qualified employee with all the requisite skills and knowledge to perform her job as a TRU Rep.

77. At times relevant to this action, Defendant failed to maintain accurate records of Plaintiff's hours worked.

78. Therefore, Defendant violated the recordkeeping provision of the FLSA, 29 U.S.C. § 211(c).

79. At times relevant to this action, Defendant failed to compensate Plaintiff for hours worked in excess of 40 per week at a rate of not less than one and one-half times her regular rate.

80. Defendant chose not to compensate Plaintiff at the required overtime premium rate despite Defendant's knowledge that failure to pay an overtime premium rate was a violation of the FLSA.

81. Defendant's decisions with respect to Plaintiff's compensation show a reckless disregard for Plaintiff's rights under the FLSA.

82. Moreover, Defendant lacked reasonable grounds for believing its pay practices with respect to Plaintiff comported with the requirements of the FLSA.

83. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

84. Pursuant to 29 U.S.C. § 216, Defendant is liable to Plaintiff for all unpaid overtime wages, liquidated damages, and attorney's fees and costs.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that:

I. The Court enter judgment in favor of Plaintiff;

II. The Court enter judgment against Defendant that its violations of the FLSA were willful;

III. The Court award Plaintiff all unpaid wages as provided for by the FLSA;

IV. The Court award Plaintiff liquidated damages equal to the amount of all unpaid wages as provided for by the FLSA;

V. The Court award Plaintiff reasonable costs and attorney's fees as provided for by the FLSA; and

VI. Plaintiff receives such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:      June 26, 2013.

|  |  |
|---|---|
|  | s/ John L. Mays |
| MAYS & KERR LLC | John L. Mays, Esq. |
| 229 Peachtree Street | Georgia Bar No. 986574 |
| International Tower \| Suite 980 | Craig Nydick, Esq. |
| Atlanta, Georgia 30303 | Georgia Bar No. 760565 |
| Telephone:  (404) 410-7998 |  |
| Facsimile:   (404) 855-4066 |  |
| john@maysandkerr.com |  |
| craig@maysandkerr.com | Counsel for Plaintiff |